**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ROGER DALE LIVINGSTON,**

      **Petitioner,**

**vs.**

                          **CASE NO. 3:08cv174-RV/WCS**

**WALTER McNEIL,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Roger Dale Livingston pursuant to 28 U.S.C. § 2254. Doc. 7. Petitioner challenges his conviction for manslaughter in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 01-CC-5514B. *Id.* Petitioner was charged with first degree murder but convicted at trial of manslaughter. Petitioner was sentenced to 40 years in prison as an habitual violent felony offender. *Id*.

Respondent filed an answer and the record in paper form. Doc. 25. Petitioner filed a traverse. Doc. 28. Respondent concedes that the petition was timely filed. Doc. 25, p. 5.

**Evidence at Trial**

The following is a summary of the evidence at trial taken from Petitioner's brief on direct appeal. Doc. 25, Ex. J.[1] In May, 2001, Petitioner and co-defendant Laura Frain went to a bar, the Scenic Hills Lounge. Ex. J, p. 2. They met Eric Seese, the decedent, and his wife, Holly Seese. *Id.* All went to the home of Eric Seese, and there Eric Seese drank heavily. *Id.* Laura Frain cooked up some oxycodone and, with Holly Seese watching, Eric Seese or "someone else" injected the oxycodone into Eric Seese. *Id.* Petitioner had a prescription for OxyContin,[2] and had a bottle with three pills in it in the trunk of his car. *Id.*, p. 3. Laura Frain had a prescription bottle with an OxyContin label on it. *Id.* Eric Seese became unconscious. *Id.* The paramedic who responded to the emergency was unsuccessful trying to intubate Seese with a breathing tube, but then her supervisor was successful, and Seese was breathing. *Id.*, p. 4. On the way to the hospital, Seese's heart beat slowed and then stopped. *Id.* The paramedics continued CPR "with ambu bagging . . . to keep oxygen to his brain," but when he arrived at the hospital, Dr. Landry found that the breathing tube had become dislodged and was connected to Seese's stomach, not to his lungs. *Id.*, pp. 4-5. Seese was subsequently

---

[1] References herein to exhibits are to the record filed in paper form with document 25.

[2] OxyContin is an opioid analgesic consisting of oxycodone hydrochloride; it has an abuse liability similar to morphine and is a schedule II controlled substance. It is used to manage moderate to severe pain when a continuous, around-the-clock analgesic is needed for an extended period of time. PHYSICIANS' DESK REFERENCE (2005). See Ex. D, p. 659 ("By the record, he had had an injection of oxycodone, which had been obtained from two tablets of OcyContin.").

declared dead. *Id.*, p. 5. Petitioner was indicted for first degree murder for distributing the oxycodone to Eric Seese, resulting in his death. *Id.*

**Section 2254 Standard of Review**

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[3] But habeas corpus relief may be granted only if Petitioner has properly exhausted his federal claims in state court. § 2254(b)(1) and (c). To do so the federal claim must be fairly presented to the state court, to give the State the opportunity to pass upon and correct alleged violations of federal rights. *See* Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citations omitted); Duncan v. Henry, 513 U.S. 364, 365-366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted).

The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728,

---

[3] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this one complete round requirement to state collateral review process as well as direct appeal.  If a claim is not fairly presented through one complete round of state court review and review is no longer available in state court, it is procedurally defaulted and the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).[4]

For claims that were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's

---

[4] The miscarriage of justice exception applies only to extraordinary cases, where a constitutional violation has probably resulted in conviction of an innocent person. McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). *See also* House v. Bell, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) (explaining what must be shown to demonstrate actual innocence as a "gateway" to review of a defaulted claim).

presumptively correct factual findings do not enjoy support in the record." <u>Lomholt v. Iowa</u>, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. <u>Hawkins v. Alabama</u>, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also*, <u>Carey v. Musladin</u>, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. <u>Williams v. Taylor</u>, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing <u>Williams</u>).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct.

at 1850.  *See also*, Panetti v. Quarterman, 551 U.S. 930, 953-954, 127 S.Ct. 2842,

2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard)

(citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation

of our cases – indeed, it does not even require *awareness* of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them."   Early

v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in

original).  Further, "whether a state court's decision was unreasonable must be

assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S.

649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a

petitioner to show that the conduct was unreasonable, a petitioner must establish that

no competent counsel would have taken the action that his counsel did take."  Chandler

v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), cert. denied, 531 U.S.

1204 (2001).  See also Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing

Chandler).  There are no rigid requirements or absolute duty to investigate a particular

defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always
> better.  Stacking defenses can hurt a case.  Good advocacy requires
> 'winnowing out' some arguments, witnesses, evidence, and so on, to
> stress others."

Id.

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

At trial, Petitioner sought to present testimony from Dr. Robert Kirby, who would have testified that the victim died due to medical malpractice by paramedics in the placement of the breathing tube.  The testimony was excluded by the trial court.  Petitioner contends that this violated the Confrontation Clause[5] and Due Process (his

---

[5] The Confrontation Clause is not implicated as Petitioner was not denied the right to confront an adverse witness.  "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses *against him.*' "  Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 153 L.Ed 2d 177 (2004).

right to present evidence in his own defense). Doc. 7, pp. 4-4a (doc. 7, pp. 5-6 on ECF, the electronic case filing docket).

The State moved to exclude the testimony of Dr. Kirby. Ex. C. The State pointed out that Dr. Kirby testified in his deposition that had the paramedics not arrived, Seese would have died anyway. *Id.*, R. 22. Quoting Johnson v. State, 59 So. 894 (Fla. 1912), the State also argued that "where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide." *Id.*, R. 23, also citing Rose v. State, 591 So. 2d 195 (Fla. 4th DCA 1991); Donohue v. State, 801 So. 2d 124 (Fla. 4th DCA 2001); Hallman v. State, 371 So. 2d 482 (Fla. 1979); United States v. Rodriguez, 279 F.3d 947 (11th Cir. 2002); and Klinger v. State, 816 So. 2d 697 (Fla. 2d DCA 2002). The State argued that "[a] claim that a victim's death was caused by medical negligence after the victim was presented for medical treatment which should have saved his life is not a valid defense." *Id.*, citing Rose and Barnes v. State, 528 So. 2d 69 (Fla. 4th DCA 1988). Copies of these cases are in this record as attachments to the State's motion. The issue, therefore, is one of relevance under state law pursuant to FLA. STAT. § 90.401. Rose, 591 So. 2d at 200.

At trial, Dr. Kirby testified as a proffer. Ex. D, p. 656. Dr. Kirby said that based upon the evidence from the paramedics, Seese was not "brain dead" when they arrived. *Id.*, p. 659. Contrary to what the State had said in its motion, Dr. Kirby said that had the paramedics not treated Seese, the oxycodone would not have killed him; he would have survived. *Id.*, p. 699. But he qualified this, explaining that the primary side effect from an opioid is respiratory depression. *Id.*, p. 690. He acknowledged that "most of the

oxycodone and other types of narcotic deaths are in people who stop breathing and never breathe and therefore they die." *Id.*, p. 705. He admitted that three breaths per minute, which Seese was experiencing when the paramedics arrived, was "not good." *Id.*, p. 704. He also acknowledged that when the emergency service arrived, Seese's condition was "absolutely life-threatening," but not fatal. *Id.*, p. 709. He explained that the maximum effect from oxycodone is at the moment of injection. He reasoned that since Seese was breathing and his heart was beating immediately following the injection, the oxycodone would thereafter have been processed by his body and Seese would have continued to live. *Id.*, pp. 699-703. He said that he thought that the proximate cause of death was that dislocation of the breathing tube at sometime after about 4:02 a.m. that morning. *Id.*, p. 669. He explained that Seese arrived at the hospital, at 4:37 a.m., and the first evidence of loss of oxygen was at 4:23 a.m., when Seese suffered bradycardia (slowing of the heart). *Id.* Dr. Kirby said that he did not think that the oxycodone was the cause of Seese's death. *Id.*, p. 670. He said that "the oxycodone would not have any effect on saturation [of oxygen in the blood] other than the indirect effect by virtue of the fact that the [breathing] tube came out." *Id.*, p. 675. He explained:

> He [Seese] died because of the misplaced endotracheal tube. He did not die as a result of the oxycodone per se. That's not to say the oxycodone didn't set things in motion, but that's different from listing it as the cause of death, and he did not die from oxycodone.

*Id.*, p. 714.

After Dr. Kirby made his proffer, the court reviewed the Florida cases relied upon by the prosecution and preliminarily granted the motion to exclude the evidence. *Id.*, p.

760. Counsel for Petitioner argued that Dr. Kirby had said that medical malpractice was the *sole* cause of death, and therefore his testimony was admissible pursuant to Florida law. *Id.* Counsel for Petitioner also admitted, however, that Dr. Kirby had said that the injection of oxycodone was a "life-threatening injury" at the moment of injection, but became less life-threatening as time went by. *Id.*, p. 762. The court again granted the motion to exclude the testimony. *Id.*, p. 763. The court based this ruling upon the finding that "the initial insult was potentially life-threatening." *Id.*, pp. 763-764.

At no time did Petitioner's attorney cite the federal Confrontation Clause or federal due process in argument before the trial court. The evidentiary issue was revisited several times, *id.*, pp. 773-792, 823-824, but no federal claim was made. As a consequence, the state trial court determined this issue entirely as a matter of state evidentiary law.

Since a federal claim was not presented to the trial court, the claim is procedurally defaulted. Petitioner must demonstrate cause and prejudice for the default or a miscarriage of justice. Coleman v. Thompson, 501 U.S. at 750.

Petitioner has not shown cause for his default. He was represented by counsel, and his attorney could have presented any federal claim at the trial level. For this reason, standing alone, this court cannot reach the merits of the claim.

Since the evidentiary issue seems to me to be at least plausible, however, I will also address the prejudice question. Federal law governs prejudice to the outcome. The rights to present evidence in a defendant's favor and to obtain favorable witnesses by compulsory process, of course, are secured by the Fifth and Sixth Amendments of the Constitution. United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004).

In assessing a defendant's claims under the Fifth and Sixth Amendments
to call witnesses in her defense, we engage in a two-step analysis. We
first examine whether this right was actually violated, then turn to whether
this error was "harmless beyond a reasonable doubt" under *Chapman v.
California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

368 F.3d at 1362-1363. "A defendant's right to a fair trial is violated when the evidence

excluded is material in the sense of a crucial, critical, highly significant factor." *Id.* at

1363, *quoting* United States v. Ramos, 933 F.2d 968, 974 (11th Cir.1991).

Whether or not the evidence was properly excluded following state rules of

evidence is not the dispositive federal issue, however:

[O]therwise relevant evidence may sometimes validly be excluded under
the Rules of Evidence. Nevertheless, the fact that a particular rule of
evidence requires the exclusion of certain evidence is not dispositive, as
particular applications of a generally valid rule may unconstitutionally deny
a defendant his rights under the Compulsory Process or Due Process
Clauses. *See Knight v. Dugger*, 863 F.2d 705, 729 (11th Cir.1988) (noting
that a conviction must be reversed where there is "either clear error by the
trial courts in their evidentiary rulings or compelling reasons for exceptions
to state evidentiary or procedural rules").

Hurn, 368 F.3d at 1363 n. 2. Likewise, that evidence was improperly included or

excluded under state evidence law does not, standing alone, state a federal claim.

Thigpen v. Thigpen, 926 F.2d 1003, 1011-1012 (11th Cir. 1991).[6] Still, the beginning

point is to determine if a state evidence law error was committed, and this is a factor in

determining whether the trial was rendered fundamentally unfair by the exclusion of the

evidence. 926 F.2d at 1012-1019.

The trial court considered the issue at length. Petitioner's attorney admitted that

Dr. Kirby had said that the injection of oxycodone was a "life-threatening injury" at the

---

[6] Indeed, evidence that has been properly included under state law may still
violate a federal right. Crawford, *supra*.

moment of injection, and that is what Dr. Kirby said. Whether the initial "injury" was life-threatening was the only relevant question under Florida evidentiary law. Whether the victim would have lived had the paramedics provided better medical care was not relevant, given the way the Johnson case stated the rule. It follows necessarily, therefore, that whether medical error in treatment contributed to the victim's death was irrelevant as a matter of state evidentiary law. Johnson and Rose, *supra*. Petitioner has not identified any federal principle of law that would have made Dr. Kirby's evidence crucial to a fair trial. Florida law defined the defense to the charge and Dr. Kirby's evidence did not present a valid defense under Florida law. Since cause for the default and prejudice to the outcome have not been shown, this court may not reach the merits of this defaulted federal claim.

**Ground Two**

Petitioner contends his appellate counsel was ineffective for failing to raise as error (1) the trial court's refusal to grant the jury's request to have the testimony of Holly Seese, Roger Livingston, and Kilgore read back to them[7] and (2) the trial court's refusal to dismiss Juror Alston.[8] Doc. 7, p. 4B (p. 7 on ECF). Respondent contends that these claims are procedurally defaulted. Doc. 25, p. 22-24.

Respondent is correct. These two claims were raised in Petitioner's petition for writ of habeas corpus filed with the First District Court of Appeal. Petitioner's conviction

---

[7] There was no contemporaneous objection as to this issue at trial. Indeed, the issue was expressly waived by counsel. Ex. D, pp.1073-1075.

[8] Alston was an alternate and was released before the jury retired to deliberate. Ex. D, pp. 1049, 1070-1072.

became final (for purposes of Florida law) when the mandate issued on Petitioner's direct appeal on July 28, 2005. Ex. L; Hernandez v. State, 990 So. 2d 1116, 1117 (Fla. 3d DCA 2008), *review denied*, 7 So. 3d 1098 (Fla. 2009). Petitioner had two years from the date his conviction was final in which to file a petition alleging ineffective assistance of appellate counsel. Hernandez, citing and quoting FLA. R. APP. P. 9.141(c)(4)(B). That Rule provides:

> A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.

FLA. R. APP. P. 9.141(c)(4)(B). Using the mailbox rule,[9] Petitioner filed his petition for writ of habeas corpus in the First District Court of Appeal on August 27, 2007. The appellate court denied the petition, citing FLA. R. APP. P. 9.141(c)(4)(B). Ex. U. This Rule is routinely followed to deny untimely petitions and is an adequate, independent state ground for rejection of the petition. *See, e.g.,* Holland v. State, 15 So. 3d 917 (Fla. 1st DCA 2009); Melara v. State, 997 So. 2d 1135, 1136 (Fla. 3d DCA 2008), *review dismissed*, 7 So. 3d 535 (Fla. 2009). The claims, therefore, are procedurally defaulted.

---

[9] In Florida, a pleading is presumed to be timely if the certificate of service shows that it was given to "officials for mailing on a certain date, if the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date." Thompson v. State, 761 So.2d 324, 325 (Fla.2000) (presuming timeliness where an inmate's legal document would be timely if filed on the date of the certificate of service, shifting the burden to the State to prove otherwise); *see also* Griffin v. Sistuenck, 816 So. 2d 600, 602 (Fla. 2002) (the certificate of service need not contain special language for the presumption in Thompson to apply). The federal rule is the same. Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (collecting cases).

"The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (citations omitted); Coleman, 501 U.S. at 753, 111 S.Ct. at 2566 (citing Murray). Petitioner has not shown cause for his default. A pro se litigant's lack of adequate legal training is not cause. Harmon v. Barton, 894 F.2d 1268, 1274-1275 (11th Cir. 1990); Alexander v. Dugger, 841 F.2d 371, 374 n. 3 (11th Cir. 1988); McCoy v. Newsome, 953 F.2d 1252, 1258-1260 (11th Cir. 1991), *cert. denied*, 504 U.S. 944 (1992); Jenkins v. Bullard, 210 Fed.Appx. 895, 901 (11th Cir. Dec 13, 2006) (not selected for publication in the Federal Reporter, No. 06 10646). Therefore, this court cannot reach the merits of these defaulted claims.

**Ground Three**

Petitioner brings six claims of ineffective assistance of trial counsel as ground three. Doc. 7, p. 5 (p. 8 in ECF). These will be addressed in the order presented.

**H**ypothesis of innocence

Petitioner contends that the circumstantial evidence did not refute his hypothesis of innocence. He argues that his attorney was ineffective for failing to move for judgment of acquittal on this basis. Doc. 7, pp. 5A-5B (pp. 9-10 on ECF). Respondent does not waive the defense of failure to exhaust state court remedies, but, with the assumption that Petitioner intends to present the same claim as presented in his Rule

3.850 motion, addresses the merits. Doc. 25, pp. 30-31. The court should do likewise

since the claim is without merit. 28 U.S.C. § 2254(b)(2).

The state court's very thorough reasons for rejecting this claim as presented in

the Rule 3.850 motion are repeated here verbatim:

> In his first claim, Defendant alleges that his counsel was ineffective for failing to "adequately argue and move for a directed verdict of acquittal where the State's evidence failed to refute the Defendant's hypothesis of innocence." Specifically, Defendant alleges that "whether Defendant supplied the Oxycontin was not proven by competent substantial evidence," and counsel should have pursued this argument as part of the motions for [judgement] of acquittal.
>
> Because Defendant appears to argue only that the State failed to prove that Defendant supplied the Oxycontin to the deceased victim, Eric Seese, the Court will focus its inquiry on that point. Defendant asserts that the first motion for judgement of acquittal made at the conclusion of the State's case "lacked in the regard that it did not challenge the State's case that the evidence was insufficient to support a finding of guilt," and that "the second judgement of acquittal ... should have argued that the State's evidence failed to rebute [sic] the Defendant's hypothesis of innocence as testified to by him on direct examination."
>
> "Where there is no showing that a motion for judgement of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffective assistance of counsel." Neal v. State, 854 So.2d 666, 670 (Fla. 2d DCA 2003), citing Rogers v. State, 567 So.2d 483 (Fla. 1st DCA 1990). "A motion for judgment of acquittal should only be granted if there is no view of the evidence from which a jury could make a finding contrary to that of the moving party. Additionally, in a circumstantial evidence case, the State's evidence must be not only consistent with guilt but inconsistent with any reasonable hypothesis of innocence." Jeffries v. State, 797 So.2d 573, 580 (Fla. 2001)(citations omitted). In moving for judgement of acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer form the evidence." Beasley v. State, 774 So.2d 649, 657 (Fla. 2000)(quoting Lynch v. State, 293 So.2d 44, 45 (Fla. 1974)).
>
> Although Defendant asserts that his argument is valid because the case "deal[s] with circumstantial evidence," the evidence presented at trial was

not strictly "circumstantial," and was sufficient to support a conclusion that Defendant provided Oxycontin to Eric Seese.

Deputy Michael Vinson testified that he found a bottle bearing Defendant's name in the trunk of Defendant's car. Three Oxycontin pills were found in the bottle, which originally contained 35 pills and was filled on May 16, 2001, four days before Eric Seese's death. *Both Ramiro Lazana and Lewis Amarrow testified that Defendant admitted to them that he provided the drugs to Eric Seese.* Holly Seese also testified that the parties (Laura Frain, Eric and Holly Seese, and Defendant) had a conversation in which it was discussed that if Mr. Seese wanted Oxycontin, he would have to buy it from Defendant, and that Defendant had to go out to his car to get it. Mrs. Seese testified that, after that conversation, Defendant went out through the garage, came back, handed pills to Mr. Seese, and Mr. Seese gave them to Laura Frain to prepare. Mrs. Seese further testified that after the drugs were prepared by Ms. Frain, Defendant and Ms. Frain started looking for a place to inject Eric Seese. Mrs. Seese stated that when Defendant "was down by [Mr. Seese's] foot," she saw the needle touch her husband's foot.

In Defendant's taped statement, which was played for the jury, Defendant admitted to giving the drugs away to someone that evening, but he did not recall whether he gave them to Ms. Frain, Mr. Seese, or Mrs. Seese. *Defendant, during cross-examination, testified that he also told his parole officer that the Oxycontin provided to Eric Seese was "very likely" provided by him.*

Defense counsel raised the issue of whether the State had proven that Defendant distributed the drugs in both motions for judgement of acquittal. As outlined above, Defendant has not demonstrated that the evidence was such that no jury could make a finding contrary to the defense. Although Defendant claims that this testimony demonstrating that he provided the drugs to Mr. Seese was not "competent," it is clear that Defendant is actually contending that the evidence was contradictory. The fact that the evidence is contradictory does not warrant a judgement of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury. Fitzpatrick v. State, 900 So.2d 495, 508 (Fla. 2005). It is not the province of the Court in ruling on a motion for judgment of acquittal to determine whether the witnesses' testimony is credible. Therefore, although Defendant may have testified in a manner inconsistent with the testimony of the State's witnesses, it does not necessarily mean that a judgement of acquittal would have been appropriate in Defendant's case, but rather that the jury was required to perform its task of weighing the credibility of the evidence presented.

Defendant has failed to demonstrate that more detailed motions for
judgement of acquittal had any likelihood of success, and has therefore
failed to show either deficient performance or prejudice. He is not entitled
to relief on this basis.

Ex. N, pp. 64-67 (emphasis added, footnotes omitted).

The Florida special rule concerning an "hypothesis of innocence" is:
Where the *only* proof of guilt is circumstantial, no matter how strongly the
evidence may suggest guilt, a conviction cannot be sustained unless the
evidence is inconsistent with any reasonable hypothesis of innocence. The
question of whether the evidence fails to exclude all reasonable
hypotheses of innocence is for the jury to determine, and where there is
substantial, competent evidence to support the jury verdict, we will not
reverse.

Jackson v. State, 2009 WL 3029662, *10 (Fla. Sep 24, 2009) (No. SC07-1233)

(emphasis added). Holly Seese testified as an eye-witness that Petitioner supplied the

OxyContin to Eric Seese. Petitioner admitted that he was the source of the OxyContin

that was ingested by the victim. All of this was direct evidence. Johnson v. State, 597

So.2d 798, 799 (Fla. 1992) (eye-witness); Simpson v. State, 3 So.3d 1135, 1147 (Fla.

2009) (confession). Thus, the hypothesis of innocence rule did not apply. State v.

Burrows, 940 So. 2d 1259, 1262 (Fla. 1st DCA 2006); Simpson. Therefore, Petitioner

has not shown that the state court's adjudication of this claim of ineffective assistance of

counsel has "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States." § 2254(d)(1).

### Suppression of Petitioner's confession

Petitioner contends his attorney was ineffective for not moving to suppress his

pre-arrest statements. Doc. 7, p. 5C (p. 11 on ECF). Apparently this claim is the same

as the claim raised on Petitioner's appeal from denial of his Rule 3.850 motion.

Compare to Ex. Q, pp. 8-9. Respondent argues that because the claim on appeal differs from the allegations in the Rule 3.850 motion, the Rule 3.850 claim is now procedurally defaulted. Doc. 25, pp. 42-43. Again, it is more efficient to reach the merits to deny the claim. § 2254(b)(2).

The centerpiece of this claim is the viability of a motion to suppress the first admissions, those given to Investigator Kilgore. The trial court concluded that Petitioner had no basis to suppress his statements to Investigator Kilgore. The court pointed out that Petitioner "does not assert that he made counsel aware of any additional facts which might have prompted a motion to suppress." Ex. N, p. 68. The court noted that *Miranda* warnings are required only during custodial interrogation, and found that Petitioner was not in custody when he made statements to Investigator Kilgore. *Id.* The court pointed out that Investigator Kilgore said that Petitioner was cooperative, that he only asked Petitioner to tell the truth, that he told Petitioner that the door to the room was closed only for privacy, and that he told Petitioner that he was not under arrest. *Id.*, pp. 68-69. He said that Petitioner was released shortly thereafter. *Id.*, p. 69. The court concluded that Petitioner "failed to demonstrate that a motion to suppress his statement to Investigator Kilgore would have been successful." *Id.*

That is even more true with respect to the claim before this court. Petitioner has alleged nothing that would have given rise to a successful suppression motion. Petitioner is required to allege specifics, not conclusions, to show ineffectiveness.[10] A

---

[10] "Conclusory allegations of ineffective assistance are insufficient." <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, <u>United States v. Lawson</u>, 947 F.2d 849, 853 (7th Cir. 1991) (same); <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert.*

successful motion to suppress is a necessary predicate to this claim faulting counsel for failure to file such a motion. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382, 109 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). For these reasons, the claim is without merit.

### The Prosecutor's Closing Argument

Petitioner contends that his attorney was ineffective for failing to object to the prosecutor's closing argument, which pointed out that Petitioner admitted he would lie to avoid jail. Doc. 7, p. 5E (p. 13 on ECF). In response, Respondent makes essentially the same failure default argument, that the claim before this court is the same as present on appeal from denial of the Rule 3.850 motion but is not the same as the claim in the Rule 3.850 motion. Doc. 25, pp. 45-48. Again, however, it is more efficient to reach the merits to deny the claim.

On cross examination, Petitioner admitted that he was not truthful when questioned by an investigating officer and he explained that he was trying to protect himself. Ex. D, p. 921. He was asked whether he lied to protect himself, and he said: "I lied to keep from going to jail that night." *Id.*, p. 922. He was asked whether he would lie to keep from going to jail at any time, and he said "yeah." *Id.* In closing argument, the prosecutor argued that Petitioner had said he "would lie to protect himself," and admitted he had done so. *Id.*, p. 971.

---

*denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); <u>Bolder v. Armontrout</u>, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); <u>United States v. Vargas</u>, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

The Rule 3.850 court determined that "the prosecutor's comments in closing argument as to Defendant's willingness to lie were proper statements based on the evidence and testimony at trial, and Defendant is not entitled to relief on this basis." Ex. N, p. 70. This was a rather unexceptional state law ruling. "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment." Mann v. State, 603 So. 2d 1141, 1143 (Fla. 1992). It is well-established in Florida that argument may be made as to questions of credibility from the trial evidence, including credibility as revealed by the demeanor of a witness. Watkins v. Sims, 81 Fla. 730, 741, 88 So. 764, 767 (Fla. 1921). The prosecutor may also argue that a witness "lied" if that characterization is based upon trial evidence. State v. Comesana, 904 So. 2d 462, 463-464 (Fla. 3d DCA 2005). Where a defendant testifies, it is not improper to argue in closing argument that the defendant's testimony had a "lack of zeal in denying guilt." Parker v. State, 641 So. 2d 483, 485 (Fla. 5th DCA 1994). Petitioner has not shown that the state court's adjudication of this claim of ineffective assistance of counsel has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

### Laura Fain Committed the Offense

Petitioner faults his attorney for failing to argue or present that Laura Fain obtained and supplied the oxycodone to Eric Seese. Doc. 7, p. 5F (p. 14 on ECF). He contends that this occurred because the trial court excluded Dr. Kirby's testimony, leaving counsel without a defense. *Id.* Petitioner contends that the state court did not address this claim, and incorrectly analyzed "prejudice." *Id.*, p. 5F-5G (pp. 14-15 on

ECF). Respondent addresses the claim, with reservations as to whether the claim was exhausted. Doc. 25, pp 51-52. As with the other claims, it is far more efficient to deny the claim.

The assertion that the Rule 3.850 court did not address the claim is incorrect. It did. Ex. N, pp. 70-72. The court's reasoning is accurately set forth in the response. Doc. 25, pp. 52-53. The court reviewed the trial evidence and concluded that Petitioner's attorney did purse a strategy of showing that Laura Frain obtained and supplied the OxyContin to the deceased, a strategy that was combined with the challenge to the cause of death. Ex. N, p. 70. The court observed that there was "extensive testimony . . . regarding Laura Frain's assistance in preparing the drugs for injection." *Id.* Laura Frain had a syringe, a spoon, and pills in a ziplock baggie. *Id.* The court noted that Laura Frain cooked the OxyContin and prepared it for injection without assistance. *Id.*, pp. 70-71. Petitioner's counsel was found to have vigorously cross-examined Holly Seese regarding where the drugs were obtained. *Id.*, p. 71. The court noted that in closing, counsel for Petitioner argued that other possibilities for "where the drugs came from," and pointed out that if Laura Frain gave the drugs to Seese, Petitioner was not responsible. *Id.* He called Deputy Terry Brunson to testify that Holly Seese told him that Laura Frain produced the white tablets and the spoon and the syringe. *Id.* The claim, therefore, is without merit.

### Laura Frain as a Witness

Petitioner contends that his attorney was ineffective for failing to call co-defendant Laura Frain as a witness. Doc. 7, p. 5I (p. 17 on ECF). Plaintiff contends that Laura Frain "could have established that Ms. Seese was responsible for the death

of her husband." *Id.* He contends that Laura Frain would have said that she gave the syringe to Holly Seese, that Holly Seese had medical experience, and that it was Holly Seese, not Petitioner, who injected the fatal dosage of drugs to Eric Seese. *Id.*, p. 5K (p. 19 on ECF). Again, Respondent argues that a portion of the specifics of this claim were not contained in the Rule 3.850 motion, and thus are now procedurally defaulted. The merits should be reached, however, to deny the claim as the claim is plainly without merit.

The trial court denied this claim, finding that while Laura Fain was available to testify (she had entered a nolo contendere plea to manslaughter on May 19, 2003), her testimony would not have changed the outcome. Ex. N, p. 72. To reach this conclusion, the trial court relied upon Laura Fain's testimony at her own plea colloquy, and made the reasonable assumption that this would have been the substance of her testimony had she been called as a witness. *Id.* The Rule 3.850 court attached a copy of that plea colloquy to its order and took judicial notice of it. *Id.*, n. 42. The court determined that while Laura Fain's testimony "may have cast Mrs. Seese in a different and less flattering light, it would not have served to absolve Defendant of his responsibility for the death of Mr. Seese." *Id.*, p. 73.

Laura Frain's sworn statements during her plea colloquy fully support the Rule 3.850 court's conclusions. Laura Frain said during the plea colloquy that Petitioner had just gotten a prescription for OxyContin, but she "was out." Ex. N, p. 215. She said she normally bought OxyContin from Petitioner. *Id.* Frain said that at the home of Eric and Holly Seese, Petitioner asked her whether he should sell some OxyContin to Eric Seese. *Id.*, p. 217. She knew that Petitioner had only a few tablets left. *Id.* Eric Seese

asked Frain if she had a syringe, and she did, and Holly Seese said she had a nursing background and would clean it. *Id.*, p. 218. Frain said that Eric Seese handed her two 40 milligram tablets of OxyContin, and asked her to prepare them, but he wanted three. *Id.* She thought that was too much. *Id.* An argument ensued, and Petitioner said he was not going to be the one to kill Eric Seese that night. *Id.*, pp. 218-219. Frain said she finished preparing the syringe and handed it to Holly Seese and "then went into the bedroom." *Id.*, p. 219. Frain said that while in the bathroom preparing a second dose (from the left over oxycodone, called the "wash"), she heard Eric Seese "ranting and raving, Hurry up, hurry up." *Id.* She heard Holly Seese say: "Well, I'll hold your foot." *Id.* Then it got "real quiet" and "all of a sudden, they screamed – or they started hollaring [sic], you know, He's turning blue." *Id.* In other words, Laura Frain would have testified that Petitioner was in the business of selling OxyContin, that he asked Frain whether he should sell OxyContin to Eric Seese, that Frain herself had none, that Frain then saw Eric Seese with two tablets of OxyContin. Frain would have testified that after she cooked up the drug and prepared the syringe, she heard Eric Seese yelling hurry up (from which a jury could infer that he was not injecting himself) and Holly Seese saying she would hold Eric Seese's foot while the injection was administered (from which a jury could infer that Holly Seese probably could not administer an injection while also holding a foot). Her testimony would have implicated Holly Seese to a greater degree, but would have been very damaging to Petitioner.

Further, Petitioner himself noted in his Rule 3.850 motion that Laura Frain said in her deposition that after she handed the syringe to Holly Seese, she walked back into the bathroom and heard Holly Seese say that she would hold Eric Seese's foot. Ex. M,

p. 23, citing Frain's deposition, pp. 38-39.[11]  This is exactly the same thing she said during the plea colloquy.  Petitioner has not shown that the Rule 3.850 court's conclusion of law has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

### Cumulative ineffective assistance of counsel error

The Rule 3.850 court denied the cumulative error claim, reasoning that the claim must fail as there was no error.  Ex. N, p. 73.  This is correct.  There was no attorney error to accumulate.  Petitioner has not shown that the Rule 3.850 court's conclusion of law has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

## Conclusion

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Roger Dale Livingston, challenging his conviction for manslaughter in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 01-CC-5514B, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on January 4, 2010.

<u>s/    William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] The pages cited of this deposition are not in this record.  Petitioner attached only pages 551, 53, and 53 to his Rule 3.850 motion.  Ex. M, pp. 57-59.  Petitioner's representation, however, is accepted as true.

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**